UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re: } Case 3:13-bk-00293-PMG
} Chapter 12

JAMES DAVID MCKATHAN
KAYLYNN HAYMAN MCKATHAN
}
Debtors. }

---

AMENDED PLAN

Debtors, James David McKathan and Kaylynn Hayman McKathan, submit the following chapter 12 plan.

A. Payments to the Trustee

1. Debtors shall make 60 equal monthly payments to the Trustee as follows - -

a. The monthly payment amount shall be $10,000.00.

b. The monthly payments shall commence on the effective date of the plan and continue on the same day of each succeeding month for 60 months.

2. Debtors shall make 4 annual payments to the Trustee as follows - -

a. The annual payments shall be in the amount of $26,100.00.

b. The annual payments shall commence on the August 1, 2014 and continue on the same day of each succeeding year for a total of 4 years.

B. Treatment of Administrative and Priority Claims

1. The Chapter 12 Trustee holds an administrative expense claim for compensation and expenses. The Trustee shall receive such an amount as is established by the United States Trustee according to law.

2. Internal Revenue Service [Claim 6] has a priority claim for income taxes in the amount of $12,902.98. This claim shall be paid in full from the proceeds of the first annual payment.

3. Marion Tax Collector [Claim 20] has a claim for ad valorem real property taxes on a parcel sited at 4775 NW 61st Lane Terrace Road | Ocala, Florida in the amount of $2,204.76. The Parcel Identification Number for this property is R1352-001-016.

a. This claim shall be paid in full from the proceeds of the first annual payment.

b. The amount to be paid is $2,463.86. This equals the amount of the claim, together with interest through the last day of September, 2014.

C. Treatment of Claims Secured Claims

1. Suntrust Bank [Claim 3] --

a. This creditor holds a claim secured by a mortgage on real property located at 13401 West Highway 316 | Reddick, Florida for $122,401.01. The Parcel Identification Number is R15847-001-14.

b. The collateral shall be retained by the Debtors.

c. This claim shall be reamortized with a monthly payment of $680.00 and interest at the rate of 5.25% per annum, until the claim is paid in full, with interest.

d. The payments shall be disbursed by the Trustee during the plan, and upon completion

of the plan, the Debtors shall make direct payments for the remainder of the months not paid under the plan. The Debtors estimate the secured claim will be satisfied, with interest, after 360 monthly payments.

e. If the holder of Claim 3 objects to the interest rate proposed above, the Court shall determine an appropriate Till Rate. The term "Till Rate" referred to in this plan shall mean the rate of interest per annum determined in accordance with the rationale enunciated in *Till v. SCS Credit Corp.,*541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The interest rate proposed for this claim is 2 points over the prime rate of interest, as reported by the *Wall Street Journal* on the date of this plan. The prime rate of interest, as reported by the *Wall Street Journal* as of the date of this plan is 3.25% per annum. Therefore, the Till Rate proposed by the Debtors is 5.25% per annum.

f. The payments described above shall commence on the effective date of the plan, and continue on the same day of each succeeding month, unless the Court enters an order requiring adequate protection payments. If the Court has entered an order requiring adequate protection payments, the payments under the plan for that creditor shall be deemed to have commenced on the date of the first required adequate protection payment, and they shall thereafter continue on the same day of each succeeding month until the allowed secured claim is satisfied as described above. If the adequate protection payments are higher than the amounts set forth in the plan, the Trustee, upon confirmation of the plan, shall reduce the amount distributed to this creditor in an amount equal to the difference between the adequate protection payment and the plan payments for the months adequate protection payments are distributed.

h. If this creditor desires to have ad valorem real property taxes and insurance escrowed,

the creditor shall notify the Trustee, and undersigned counsel, in writing, and the monthly distribution to this creditor shall be increased accordingly. Further, the total monthly payment shall also be adjusted to reflect the increased payment to this creditor, and the additional administrative expenses due the Trustee.

i. The Debtors, upon reasonable request by this creditor, shall execute a note, security agreement, mortgage or other similar instrument or document to reflect the amounts owing, and the terms of payment as provided by the plan, and to preserve and maintain any security interest, mortgage interest or lien rights. It shall be the responsibility of this creditor to prepare any such instrument or documents. Instruments and documents prepared under this section may provide that the debtor be required to maintain insurance and pay taxes on collateral, only to the extent that a creditor had such a right by way of statute or written agreement prior to the petition date. Instruments and documents prepared under this section may provide that if the Debtors default in payments under the plan, or in any obligation by way of statute or written agreement to provide insurance or pay taxes (except for taxes paid through the plan and owing on the effective date of the plan), then the secured creditor may, at its option, accelerate full payment of the obligation. Upon default, as set forth above, and after completion of payments under the plan, the instrument may provide the secured creditor pursue its remedies in its collateral, as provided by law, including repossession or foreclosure of its interest, and maintain the rights to seek a judgment for any deficiency. Further, upon default as set forth above, the document or instrument may provide that the creditor is entitled to reasonable attorney's fees and costs incurred in the preservation, liquidation of its collateral, foreclosure of its lien rights, or in collecting amounts due. Such instruments are documents may also provide for payment of a late

charge upon the failure of the debtor to make timely payments. However, the late charge shall not be in an amount in excess of 5% of the monthly payment.

2. PNC Bank [Claim 5] --

a. This creditor holds a claim secured by a mortgage on real property located at 13401 West Highway 316 | Reddick, Florida for $510,521.81. The Parcel Identification Number is R15847-001-14. Under an Order Sustaining Objection to Claim 5 dated May 14, 2013 [DOC #41] the claim was allowed as a secured claim in the amount of $53,749.99 due to two prior recorded mortgages on the collateral. The Debtors agree to entry of an order setting aside the Order Sustaining the Objection to Claim 5 [DOC #41], if PNC Bank files a motion to set it aside and seeks a valuation of its secured claim, within 90 days of the effective date of the plan. If PNC Bank fails to file a motion to set aside the order and seek a valuation of its secured claim within 90 days of the effective date of the plan, it shall be barred from doing so, and Claim 5 shall be deemed allowed as a secured claim only in the amount of $53,749.99.

b. The collateral shall be retained by the Debtors.

c. To the extent Claim 5 is secured, the secured claim shall be reamortized with a monthly payment of $2,820.00 and interest at the rate of 5.25% per annum, until the claim is paid in full, with interest.

d. The payments shall be disbursed by the Trustee during the plan, and upon completion of the plan, the Debtors shall make direct payments for the remainder of the months not paid under the plan. The Debtors estimate the secured claim will be satisfied, with interest, after 20 monthly payments, if the secured claim is allowed only in the amount of $53,749.99, and after 360 months if allowed as a secured claim for the full amount of $510,521.81.

e. If the holder of Claim 5 objects to the interest rate proposed above, the Court shall determine an appropriate Till Rate. The term "Till Rate" referred to in this plan shall mean the rate of interest per annum determined in accordance with the rationale enunciated in *Till v. SCS Credit Corp.,*541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The interest rate proposed for this claim is 2 points over the prime rate of interest, as reported by the *Wall Street Journal* on the date of this plan. The prime rate of interest, as reported by the *Wall Street Journal* as of the date of this plan is 3.25% per annum. Therefore, the Till Rate proposed by the Debtors is 5.25% per annum.

f. The payments described above shall commence on the effective date of the plan, and continue on the same day of each succeeding month.

g. The Debtors, upon reasonable request by this creditor, shall execute a note, security agreement, mortgage or other similar instrument or document to reflect the amounts owing, and the terms of payment as provided by the plan, and to preserve and maintain any security interest, mortgage interest or lien rights. It shall be the responsibility of this creditor to prepare any such instrument or documents. Instruments and documents prepared under this section may provide that the debtor be required to maintain insurance and pay taxes on collateral, only to the extent that a creditor had such a right by way of statute or written agreement prior to the petition date. Instruments and documents prepared under this section may provide that if the Debtors default in payments under the plan, or in any obligation by way of statute or written agreement to provide insurance or pay taxes (except for taxes paid through the plan and owing on the effective date of the plan), then the secured creditor may, at its option, accelerate full payment of the obligation. Upon default, as set forth above, and after completion of payments under the plan, the

instrument may provide the secured creditor pursue its remedies in its collateral, as provided by law, including repossession or foreclosure of its interest, and maintain the rights to seek a judgment for any deficiency. Further, upon default as set forth above, the document or instrument may provide that the creditor is entitled to reasonable attorney's fees and costs incurred in the preservation, liquidation of its collateral, foreclosure of its lien rights, or in collecting amounts due. Such instruments are documents may also provide for payment of a late charge upon the failure of the debtor to make timely payments. However, the late charge shall not be in an amount in excess of 5% of the monthly payment.

3. SunTrust Bank [Claim 7] --

a. This creditor holds a claim secured by a mortgage on real property located at 17400 NW 120th Terrace Road | Reddick, Florida. The Parcel Identification Number for this property is R0197-008-001. Claim 7 was also secured by a mortgage on the real property located at 17340 NW 120th Terrace Road | Reddick, Florida which has been surrendered and foreclosed on under an agreed order granting relief from the automatic stay dated August 16, 2013 [DOC #60]. The Parcel Identification Number for the property which was foreclosed is R0197-008-000.

a. Pursuant to the Stipulation and Agreement for Use of cash Collateral, Providing Adequate Protection to SunTrust Bank, and Agreed Plan Treatment [Doc #59] SunTrust Bank shall continue to have a claim secured by the real property located at 17400 NW 120th Terrace Road | Reddick, Florida, and personal property under the loan agreements, in the amount of $500,000.00.

b. The real property located at 17400 NW 120th Terrace Road | Reddick, Florida shall be retained by the Debtors.

c. This creditor shall receive monthly payments equal to the amount of the secured claim in the amount of $500,000.00 amortized over 240 months at 5.25% per annum from August 1, 2013 and a balloon payment 60 months after the effective date of the plan. The Debtors shall be given credit for the adequate protection payments made under the order dated August 18, 2013 [DOC #60].

d. The Trustee shall continue to disburse $3,369.22.00 to this creditor each month under the plan. These payments shall be in addition to the adequate protection payments previously disbursed, and equal the amount of the claim reamortized at the interest rate and for the amount set forth above.

4. Springleaf Financial Services [Claim 8] --

a. This creditor holds a claim secured by a mortgage on real property located at 4775 NW 61st Lane Terrace Road | Ocala, Florida for $55,143.30. The Parcel Identification Number for this property is R1352-001-016.

b. The collateral shall be retained by the Debtors.

c. This claim shall be reamortized with a monthly payment of $620.00 and interest at the rate of 5.25% per annum, until the claim is paid in full, with interest.

d. The payments shall be disbursed by the Trustee during the plan, and upon completion of the plan, the Debtors shall make direct payments for the remainder of the months not paid under the plan. The Debtors estimate the secured claim will be satisfied, with interest, after 114 monthly payments.

e. If the holder of Claim 8 objects to the interest rate proposed above, the Court shall determine an appropriate Till Rate. The term “Till Rate” referred to in this plan shall mean the

rate of interest per annum determined in accordance with the rationale enunciated in *Till v. SCS Credit Corp.,*541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The interest rate proposed for this claim is 2 points over the prime rate of interest, as reported by the *Wall Street Journal* on the date of this plan. The prime rate of interest, as reported by the *Wall Street Journal* as of the date of this plan is 3.25% per annum. Therefore, the Till Rate proposed by the Debtors is 5.25% per annum.

f. The payments described above shall commence on the effective date of the plan, and continue on the same day of each succeeding month, unless the Court enters an order requiring adequate protection payments. If the Court has entered an order requiring adequate protection payments, the payments under the plan for that creditor shall be deemed to have commenced on the date of the first required adequate protection payment, and they shall thereafter continue on the same day of each succeeding month until the allowed secured claim is satisfied as described above. If the adequate protection payments are higher than the amounts set forth in the plan, the Trustee, upon confirmation of the plan, shall reduce the amount distributed to this creditor in an amount equal to the difference between the adequate protection payment and the plan payments for the months adequate protection payments are distributed.

g. If this creditor desires to have ad valorem real property taxes and insurance escrowed, the creditor shall notify the Trustee, and undersigned counsel, in writing, and the monthly distribution to this creditor shall be increased accordingly. Further, the total monthly payment shall also be adjusted to reflect the increased payment to this creditor, and the additional administrative expenses due the Trustee.

h. The Debtors, upon reasonable request by this creditor, shall execute a note, security

agreement, mortgage or other similar instrument or document to reflect the amounts owing, and the terms of payment as provided by the plan, and to preserve and maintain any security interest, mortgage interest or lien rights. It shall be the responsibility of this creditor to prepare any such instrument or documents. Instruments and documents prepared under this section may provide that the debtor be required to maintain insurance and pay taxes on collateral, only to the extent that a creditor had such a right by way of statute or written agreement prior to the petition date. Instruments and documents prepared under this section may provide that if the Debtors default in payments under the plan, or in any obligation by way of statute or written agreement to provide insurance or pay taxes (except for taxes paid through the plan and owing on the effective date of the plan), then the secured creditor may, at its option, accelerate full payment of the obligation. Upon default, as set forth above, and after completion of payments under the plan, the instrument may provide the secured creditor pursue its remedies in its collateral, as provided by law, including repossession or foreclosure of its interest, and maintain the rights to seek a judgment for any deficiency. Further, upon default as set forth above, the document or instrument may provide that the creditor is entitled to reasonable attorney's fees and costs incurred in the preservation, liquidation of its collateral, foreclosure of its lien rights, or in collecting amounts due. Such instruments are documents may also provide for payment of a late charge upon the failure of the debtor to make timely payments. However, the late charge shall not be in an amount in excess of 5% of the monthly payment.

5. Federal National Mortgage Association (Fannie Mae) serviced by Seterus, Inc. [Claim 11] --

a. This creditor holds a claim secured by a first mortgage on real property located at 2680

NE 37th Place | Ocala, Florida for $83,524.86. The Parcel Identification Number is R15847-001-14.

b. The collateral shall be retained by the Debtors.

c. This claim shall be reamortized with a monthly payment of $614.18 and interest at the rate of 6.25% per annum, until the claim is paid in full, with interest.

d. The payments shall be disbursed by the Trustee during the plan, and upon completion of the plan, the Debtors shall make direct payments for the remainder of the months not paid under the plan.

e. If the holder of Claim 11 objects to the interest rate proposed above, the Court shall determine an appropriate Till Rate. The term “Till Rate” referred to in this plan shall mean the rate of interest per annum determined in accordance with the rationale enunciated in *Till v. SCS Credit Corp.,*541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The interest rate proposed for this claim is 3 points over the prime rate of interest, as reported by the *Wall Street Journal* on the date of this plan. The prime rate of interest, as reported by the *Wall Street Journal* as of the date of this plan is 3.25% per annum. Therefore, the Till Rate proposed by the Debtors is 6.25% per annum.

f. This creditor shall have the right to file an amended proof of claim within 60 days of the effective date of the plan to include accrued interest under the provisions of the mortgage, attorney fees, and for taxes and insurance paid on behalf of the Debtor by the mortgagee. The monthly payment to the mortgagee will not increase, if an amended claim is filed. Instead, the total amount of the claim shall be deemed reamortized at 6.25% per annum (or at the Till Rate established by the Court, if applicable) at the payment rate of $614.18 per month.

e. If this creditor desires to have ad valorem real property taxes and insurance escrowed, the creditor shall notify the Trustee, and undersigned counsel, in writing, and the monthly distribution to this creditor shall be increased accordingly. Further, the total monthly payment shall also be adjusted to reflect the increased payment to this creditor, and the additional administrative expenses due the Trustee.

f. The payments described above shall commence on the effective date of the plan, and continue on the same day of each succeeding month, unless the Court enters an order requiring adequate protection payments.

g. The Debtors, upon reasonable request by this creditor, shall execute a note, security agreement, mortgage or other similar instrument or document to reflect the amounts owing, and the terms of payment as provided by the plan, and to preserve and maintain any security interest, mortgage interest or lien rights. It shall be the responsibility of this creditor to prepare any such instrument or documents. Instruments and documents prepared under this section may provide that the debtor be required to maintain insurance and pay taxes on collateral, only to the extent that a creditor had such a right by way of statute or written agreement prior to the petition date. Instruments and documents prepared under this section may provide that if the Debtors default in payments under the plan, or in any obligation by way of statute or written agreement to provide insurance or pay taxes (except for taxes paid through the plan and owing on the effective date of the plan), then the secured creditor may, at its option, accelerate full payment of the obligation. Upon default, as set forth above, and after completion of payments under the plan, the instrument may provide the secured creditor pursue its remedies in its collateral, as provided by law, including repossession or foreclosure of its interest, and maintain the rights to seek a

judgment for any deficiency. Further, upon default as set forth above, the document or instrument may provide that the creditor is entitled to reasonable attorney's fees and costs incurred in the preservation, liquidation of its collateral, foreclosure of its lien rights, or in collecting amounts due. Such instruments are documents may also provide for payment of a late charge upon the failure of the debtor to make timely payments. However, the late charge shall not be in an amount in excess of 5% of the monthly payment.

6. Federal National Mortgage Association (Fannie Mae) serviced by Seterus, Inc. [Claim 12] –

a. This creditor holds a claim secured by a first mortgage on real property located at 13401 West Highway 316 | Reddick, Florida for $229,361.03. The Parcel Identification Number is R15847-001-14.

b. The collateral shall be retained by the Debtors.

c. This claim shall be reamortized with a monthly payment of $1,270.00 and interest at the rate of 5.25% per annum, until the claim is paid in full, with interest.

d. This creditor shall have the right to file an amended proof of claim within 60 days of the effective date of the plan to include accrued interest under the provisions of the mortgage, attorney fees, and for taxes and insurance paid on behalf of the Debtor by the mortgagee. The monthly payment to the mortgagee will not increase, if an amended claim is filed. Instead, the total amount of the claim shall be deemed reamortized at 5.25% per annum (or at the Till Rate established by the Court, if applicable) at the payment rate of $1,270.00 per month.

e. If the holder of Claim 12 objects to the interest rate proposed above, the Court shall determine an appropriate Till Rate. The term “Till Rate” referred to in this plan shall mean the

rate of interest per annum determined in accordance with the rationale enunciated in *Till v. SCS Credit Corp.,*541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The interest rate proposed for this claim is 2 points over the prime rate of interest, as reported by the *Wall Street Journal* on the date of this plan. The prime rate of interest, as reported by the *Wall Street Journal* as of the date of this plan is 3.25% per annum. Therefore, the Till Rate proposed by the Debtors is 6.25% per annum.

f. If this creditor desires to have ad valorem real property taxes and insurance escrowed, the creditor shall notify the Trustee, and undersigned counsel, in writing, and the monthly distribution to this creditor shall be increased accordingly. Further, the total monthly payment shall also be adjusted to reflect the increased payment to this creditor, and the additional administrative expenses due the Trustee.

g. The payments described above shall commence on the effective date of the plan, and continue on the same day of each succeeding month, unless the Court enters an order requiring adequate protection payments.

h. The Debtors, upon reasonable request by this creditor, shall execute a note, security agreement, mortgage or other similar instrument or document to reflect the amounts owing, and the terms of payment as provided by the plan, and to preserve and maintain any security interest, mortgage interest or lien rights. It shall be the responsibility of this creditor to prepare any such instrument or documents. Instruments and documents prepared under this section may provide that the debtor be required to maintain insurance and pay taxes on collateral, only to the extent that a creditor had such a right by way of statute or written agreement prior to the petition date. Instruments and documents prepared under this section may provide that if the Debtors default in

payments under the plan, or in any obligation by way of statute or written agreement to provide insurance or pay taxes (except for taxes paid through the plan and owing on the effective date of the plan), then the secured creditor may, at its option, accelerate full payment of the obligation. Upon default, as set forth above, and after completion of payments under the plan, the instrument may provide the secured creditor pursue its remedies in its collateral, as provided by law, including repossession or foreclosure of its interest, and maintain the rights to seek a judgment for any deficiency. Further, upon default as set forth above, the document or instrument may provide that the creditor is entitled to reasonable attorney's fees and costs incurred in the preservation, liquidation of its collateral, foreclosure of its lien rights, or in collecting amounts due. Such instruments are documents may also provide for payment of a late charge upon the failure of the debtor to make timely payments. However, the late charge shall not be in an amount in excess of 5% of the monthly payment.

7. CCCB Community Bank. [Claim 15] holds a claim secured by a mortgage on real property located at 11976 Alabama Highway 137 | Andalusa, Alabama for $91,771.72.

a. The collateral shall be surrendered by the Debtors.

b. This creditor shall not receive any distribution on its secured claim under the plan.

D. Treatment of General Unsecured Claims.

1. Creditors who hold allowed general unsecured claims shall receive a pro-rata distribution of remaining amounts after disbursements are made to those holding allowed administrative, priority and secured claims as set forth above, until such time as they are satisfied.

E. Miscellaneous Provisions

1. References to statutory sections, chapters and in this document, are references to sections and chapters of the Bankruptcy Code, unless otherwise indicated. References rules in this document are references to rules of the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

2. The "effective date of the plan" shall be the first day of the first month following the date of the entry of an order confirming this plan.

3. Title to all property of the estate shall revest in the Debtor upon the entry of an order confirming this plan, unless otherwise ordered by the Court.

4. The Debtors shall not be charged or assessed a late charge or fee for payments made under the plan.

5. Each creditor shall retain its lien to the extent permitted by §506(d).

6. Any claims filed after the claims deadline established pursuant to Rule 3002, shall not receive distribution under this plan unless specifically provided for above.

Dated : June 30, 2014

By: /s/ Richard A. Perry

RICHARD A. PERRY
Florida Bar No. 394520
820 East Fort King Street
Ocala, Florida 34471-2320
352- 732-2299
richardperry@richard-a-perry.com
Attorney for Debtors